IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | **CIVIL ACTION** |
| v. | ) ) | No.  06-1299-MLB |
| KEITH BILLINGSLEY, et al., | ) ) | |
| Defendants. | ) ) ) | |

<u>MEMORANDUM DECISION</u>

**I.    INTRODUCTION**

On August 18, 2005, Haley Hilderbrand, a 17-year old high school senior, was on the premises of the Lost Creek Animal Sanctuary ("the Sanctuary") in Mound Ridge, Kansas, having her picture taken with a Siberian tiger.  Ms. Hilderbrand was attacked by the tiger during the photo session and died as a result.  At the time of the attack, the only insurance policy in effect was a homeowner's policy issued by Safeco to Keith and Sharon Billingsley, on whose property the Sanctuary was located.

In May 2006, Randy Hilderbrand, Haley's father, filed a wrongful death and survival action in the District Court of Labette County, Kansas.  The named defendants were Lost Creek Animal Sanctuary Foundation, Inc., a Kansas corporation, and Doug Billingsley and Keith Billingsley, individuals, doing business as Lost Creek Animal Sanctuary and Animal Entertainment Productions.  Thereafter, in October 2006, Safeco filed this case seeking a declaration that the homeowner's insurance policy issued to Keith and Sharon Billingsley

provided no coverage for the claims made in the Labette County suit.

The case was tried to the court on July 9, 2008.  This decision represents the findings of fact and conclusions of law resulting therefrom.  Fed. R. Civ. P. 52(a).

## II.  FINDINGS OF FACTS

After two years in college, Doug Billingsley formed the Sanctuary in 1994.[1]  The Sanctuary was adjacent to the home of Keith and Sharon Billingsley, Doug's parents, in Mound Valley, Kansas.  Doug started the Sanctuary because he wanted to rescue animals.  Most of the animals they accepted at the Sanctuary were exotic animals, i.e. bears, lions, tigers, leopards, and others.  The Sanctuary obtained licenses from the state of Kansas, the United States Department of Agriculture and the United States Department of Fish and Wildlife. These agencies, particularly the USDA, inspected the Sanctuary several times.

The Sanctuary started with one large cat.  Doug began hands on training with any new cubs that were at the Sanctuary.  At some point, Doug received training specific to large cats when he went to California.  After that training, in 1998, Doug went to Malaysia to work in a magic show that involved large cats.  Doug then worked on a cruise ship out of Singapore for approximately four months in which he performed in a magic show with two large cats.  After his employment on the cruise ship, Doug returned to the Sanctuary for about one month and then left to work at the MGM in Las Vegas.  Doug would sit in the lion habitat at  the MGM with the lions to show human

---

[1] On February 8, 2001, Keith and Doug Billingsley incorporated the Sanctuary as a not for profit corporation.

interaction.  Approximately six months later, Doug returned to the Sanctuary.

Doug had hoped that the Sanctuary would receive donations that would support the animals but that did not occur.  Doug then decided to create Animal Entertainment Productions (AEP).  AEP was formed in order to generate income by using the animals kept in the Sanctuary for magic shows and entertainment.  Sharon and Keith were listed as fifty-one percent (51%) owners and Doug was listed as a forty-nine percent (49%) owner of the business.  On October 3, 2001, AEP obtained an SBA loan in the amount of $131,000 from Labette County State Bank.  The funds were used for various expenses, including a shop,[2] a skid loader and magic show props.  Doug and Keith also obtained a license through the United States Department of Agriculture that listed them as Class "C" exhibitors under the Animal Welfare Act.

Doug intended for the animals to perform in magic shows, including those across the country, and to provide educational programs for children and individuals in nursing homes.  Doug also intended for the business to be his source of income and employment.  However, the animals only participated in a few programs while AEP was in existence.  For income, AEP would lease animals to other companies and it also bought and sold animals.  During the time it was in existence, the Sanctuary housed approximately 150-200 large cats.  The Sanctuary usually had around 25 cats at a single time.

During the first couple years of AEP's existence, the loan funds

---

[2] The shop that was listed for AEP was located at 14034 Gray Road in Mound Valley, Kansas.  The physical address of the Billingsley home was 14022 Gray Road.

were used to pay for costs of the animals and also to pay a small salary to Doug.  Usually, Keith and Sharon serviced the loan by income that they received from their full time jobs as social workers.  On some occasions, Doug would draw a check from the loan funds in order to make that month's loan payment.

AEP's tax returns show that the business always operated at a loss.  The profits over the years consisted of income from performing a few shows, selling animals, equipment and props.  AEP's expenses consisted of the shop's depreciation, food for the animals and other business expenses.  On occasion, AEP also deducted the cost of liability insurance.  AEP purchased liability insurance coverage for approximately one year in either 2002 or 2003.  It also purchased an insurance policy that was in force for approximately three days in 2004 for a specific performance.  Other than those specific times, AEP did not carry liability insurance due to its high cost.

During AEP's operation, Doug spent an extensive amount of time contacting individuals in an attempt to have a magic show or program with the animals.  Doug was not very successful.  Doug also traveled to different locations to discuss shows with potential clients.  Even though AEP was not successful, the Billingsleys did not discontinue the business because they hoped for the future.

In 2005, Haley began visiting the Sanctuary with Kyle Billingsley, Doug's cousin.  Haley would help by cleaning the cages and she also would feed the small cubs.  Haley asked Doug if she could be photographed with a large cat for her high school senior pictures. Doug agreed because Haley had spent so much time at the Sanctuary assisting him.  Doug did not charge Haley for being photographed with

the tiger.  Prior to Haley's photo shoot with the tiger, Doug had
allowed other individuals to be photographed with large cats.  Those
individuals did not pay a fee but would, on occasion, donate to the
Sanctuary.

On August 18, 2005, Haley came to the Sanctuary for her photo
shoot with a large cat.  Doug went to the Sanctuary and picked Shaka,
a tiger, for the photo after determining that Shaka appeared to be in
good spirits.  Shaka was usually easy to work with and enjoyed laying
down.  Doug brought out Shaka on a leash.  Doug also had a cane,
pepper spray, and meat in his pockets for a reward.  At some point
during the photo shoot, Shaka attacked Haley.  Kyle ran for a gun and
returned to shoot Shaka.  Haley did not survive.

Safeco seeks a declaration from this court that the Billingsley's
homeowner's policy does not cover the incident because it was
excludable under policy.  The pertinent portions of the homeowners'
insurance policy provided by Safeco state the following:

> Insured:
> Keith Billingsley
> Sharon Billingsley
>
> ***
>
> If a claim is made or a suit is brought against any
> insured for damages because of bodily injury or property
> damage caused by an occurrence to which this coverage
> applies, we will . . . pay up to our limit of liability for
> the damages for which the insured is legally liable; and .
> . . provide a defense at our expense by counsel of our
> choice. . . .
>
> ***
>
> "Occurrence" means an accident, including exposure to
> conditions which results in:
>    a.   bodily injury; or
>    b.   property damage;
> during the policy period. Repeated or continuous

-5-

exposure to the same general conditions is considered to be one occurrence.

\*\*\*

LIABILITY LOSSES WE COVER
COVERAGE F - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury. . . .

2.    to a person off the insured location, if the bodily injury:

     d. is caused by an animal owned by or in the care of any insured.

\*\*\*

LIABILITY LOSSES WE DO NOT COVER

1.    Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:

     b.   arising out of business pursuits of any insured . . .

This exclusion does not apply to:

(1)   Activities which are ordinarily incident to non-business pursuits. . . .

\*\*\*

     "Insured" means you and the following residents of your household:

     a.    your relatives;[3]
     b.    any other person under the age of 21 who is in the care of any person named above.

     Under Section II - Liability Coverage, "insured" also means:
     c.   with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in a. or b.   A person or organization using or having custody of these animals or watercraft in the course of any business, or without

---

     [3] Doug Billingsley was Keith and Sharon Billingsley's son and resided at their residence.   (Doc. 57, exh. N at 5).

permission of the owner is not an insured. . .

***

"Business" includes trade, profession or occupation.
(Trial Exh. 1).

### III. CONCLUSIONS OF LAW

Safeco asserts that the accident is excluded under the policy because it arose out of the business pursuits of the Billingsleys. In <u>Krings v. Safeco Ins. Co. of America</u>, 6 Kan. App.2d 391, 628 P.2d 1071 (1981), the Kansas Court of Appeals adopted a test to determine whether an activity is excluded under the business pursuits rule. That test was then adopted by the Kansas Supreme Court in <u>AMCO Ins. Co. v. Beck</u>, 261 Kan. 266, 278, 929 P.2d 162 (1996). <u>Krings</u> set forth the test and the reasoning as follows:

> The determination of this case revolves around the interpretation of certain clauses included in the issued policies. The 'business pursuits' clause is under examination in this decision. The 'business pursuits' exclusion is a common exception to broad coverage provided in homeowners and general liability insurance policies. The reason for this particular exclusion from the general coverage provided in the policy has been analyzed and summarized by various commentators. They are in agreement that the exclusion of business liability removes coverage which is not essential to the purchasers of the policy and which would normally require specialized underwriting and rating, and thus keeps premium rates at a reasonable level.
>
> "Kansas courts have not had the opportunity to determine what activities are excluded under the 'business pursuits' clause. Other courts, however, have generally followed the view expressed in <u>Fadden v. Cambridge Mutual Fire Insurance Co.</u>, 51 Misc.2d 858, 274 N.Y.S.2d 235, 241 (1966):
>
> > To constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful

-7-

> employment, means of earning a living, procuring
> subsistence or profit, commercial transactions or
> engagements.

6 Kan. App.2d at 393.

In AMCO Ins. Co. v. Beck, 261 Kan. 266, 929 P.2d 162 (1996), fifteen year old Teri Beck babysat Tyler and Courtney Moran at their residence. Teri worked approximately 5 days during a two week period and was paid $2.00 per hour for her services. On July 9, 1993, Mrs. Moran asked Teri to give the children a bath. Teri put the youngest child in the bath and left the bathroom with the water running. When Teri returned, she began washing the child's hair and noticed the water was extremely hot. Teri removed the child from the water. The child suffered third degree burns on her body. The plaintiff, AMCO Ins., asserted that the policy's business exclusion applied in Teri's situation. The Kansas Supreme Court disagreed.

The Beck court found that the first element was met since Teri's hours were continuous. However, the court held that the second element was not met. The court gave the following analysis as to the second element:

> However, we agree with the trial court that the record before us does not satisfy the second element under the Krings test- profit motive. It is true that the Morans paid Teri $2 per hour for her babysitting. It also appears that Teri babysat the Moran children for money and not out of friendship or charity. Yet, in adopting the Krings test, the Court of Appeals specifically rejected a rule that included as a business pursuit every activity where profit was a motive. Instead, the activity which is motivated by money only qualifies as a business or business pursuit if the activity is a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements. Read together, this element indicates that the activity must be a significant source of income. It does not appear that Teri's babysitting services met this test.

-8-

> Supplemental income derived from part-time activities may satisfy the profit motive element. However, in order for the supplemental income from part-time activities to satisfy the profit motive element, the income must be capable of significantly supplementing one's livelihood or subsistence and contributing to one's living requirements. This does not appear to be the case with the money Teri earned from babysitting. Here, Teri's hourly wage was well below the minimum wage. She was not licensed as a day care provider. She did not advertise. The babysitting did not take place in her house and she was a full-time student on summer break. As such, Teri's babysitting services did not qualify as a business activity and did not fall within the insurance policy's business exclusion.
>
> This conclusion is consistent with the fact a reasonable person would not believe that babysitting was the trade, profession, or occupation of this 15-year-old child. We emphasize the test is not what the money is used for, but whether the money is capable, from a reasonable person's point of view, of significantly supplementing one's livelihood. There should be no distinction drawn between a minor with limited income who necessarily must spend the earned money on necessities and a minor who, for whatever reason, is able to use the money for any purpose.

Id.

However, in Krings, the Kansas Court of Appeals determined that the business exclusion did apply. 6 Kan. App.2d 391.  T.R. Krings was a named insured on a homeowners' insurance policy provided by the defendant.   In 1970, Krings became a director of the Kansas Savings and Loan Association.  As a director, Krings earned $50 per meeting that he attended.   Krings also purchased common stock in the Kansas Savings and Loan Association.   Krings was sued as a result of his activities with the Association.   The defendant insurance company asserted that those activities were not covered under his homeowners' insurance policy.

The Kansas Court of Appeals set forth the two-prong business pursuit test which required both continuity and a profit motive.  Even though the amount of money earned during his employment as a director

was not enough to sustain a living, the court determined that his activities must be excluded under the business pursuit rule. The court found that the plaintiff was paid for his work and that the plaintiff hoped that the association would be successful so that his stock would gain value. Id. at 394.

In this case, Hilderbrand asserts that both elements of the business pursuits rule have not been met. First, Hilderbrand asserts that the element of continuity has not been met because the photo sessions with the tigers were rare and only happened occasionally. The first element requires that there is a customary engagement or a stated occupation, not that the alleged activity was one that the business regularly engaged in. Hilderbrand does not provide any authority for his position that the specific activity that occurred at the time of the accident must occur on a continuous basis. The Billingsleys created the Sanctuary and AEP in 2001 and they operated both until Ms. Hilderbrand's death. Doug consistently worked at attempting to obtain income for AEP, albeit unsuccessfully. Accordingly, the court finds that the continuous element has been met.

Second, Hilderbrand asserts that the profit motive element has not been met since the activity did not occur in conjunction with a business activity and AEP did not produce a significant source of income. Hilderbrand first asserts that the photo activity was not part of a business pursuit because there was no financial gain. That fact is irrelevant. The policy clearly excludes coverage for any

-10-

animal that is kept for the purposes of a business pursuit.[4]  Even if
the activity that causes the accident is not made in conjunction with
a business activity, the incident is excluded because of the operation
of the business.  <u>Henison v. Porter</u>, 244 Kan. 667, 673, 772 P.2d 778
(1989).

Next, Hilderbrand argues that the business pursuits exclusion
does not apply because the Billingsleys did not receive significant
income from the animals.  The only authority relied on by Hilderbrand
is the <u>Beck</u> case. The profit motive test states that "there must be
shown to be such activity as a means of livelihood, gainful
employment, means of earning a living, procuring subsistence or
profit, commercial transactions or engagements."  <u>Beck</u>, 261 Kan. at
278.  Hilderbrand asserts that the holding in <u>Beck</u> supports a
conclusion that the Billingsleys' activities are not excluded under
the insurance policy because they did not receive a significant source
of income from the animals.  Hilderbrand argues that the Billingsleys
lost a significant amount of money keeping the animals and that their
activity was more akin to a hobby than a business pursuit.  The court
disagrees with Hilderbrand's interpretation of the <u>Beck</u> case.

The <u>Beck</u> court did not solely look at the economic impact of
Teri's summer employment.  The court also noted that Teri was a minor,
she did not advertise and she did not obtain a license.  The court
came to the conclusion that "a reasonable person would not believe
that babysitting was the trade, profession, or occupation of this

---

[4] "A person or organization using or having custody of these
animals or watercraft in the course of any business, or without
permission of the owner is not an insured. . ."  Policy at II.c.

15-year-old child." <u>Id.</u>  The <u>Beck</u> case is clearly distinguishable from this case in that it pertains to activities of a child during her summer vacation.

There are many important facts which establish that the Billingsleys, specifically Doug, had a clear profit motive in establishing AEP.  Doug testified that he hoped the animals would be a part of productions all over the world.  Doug purchased equipment used for magic shows and obtained a significant business loan from the bank which he intended to repay with income from the business.  Doug was employed by AEP and received payment from the business loan.  The Billingsleys' only problem was that the business was not successful.  This is evident from the tax returns.  While Kansas has not specifically addressed this issue, the Montana Supreme Court has held that a tax return filing showing income and expenses establishes a profit motive even when the insured has losses from the activity.  <u>Heggen v. Mountain West Farm Bureau Mut. Ins. Co.</u>, 715 P.2d 1060, 1063 (Mont. 1986).  The Connecticut Supreme Court also determined that the filing of a tax return was a significant fact that established the activity as a business pursuit with a profit motive even though there was a loss.  <u>Pacific Indem. Ins. Co. v. Aetna Cas. & Sur. Co.</u>, 688 A.2d 319, 323-24 (1997).

The Billingsleys clearly operated AEP as a business.  Even though it was not successful, the court does not believe that the Kansas Supreme Court intended for the profit motive test to look solely at the actual profit from the business.  Rather, the court must look at all the facts pertaining to the business.  The Billingsleys, particularly Doug, operated a business with the intention of making

-12-

a profit and benefitting from that part-time employment.  Since AEP was a source of employment and income for Doug, the court finds that Safeco has put forth sufficient evidence to satisfy the profit motive element and, therefore, the business pursuits exclusion does apply.

Finally, Hilderbrand asserts that the insurance policy should provide coverage because the activity was ordinarily incident to non-business pursuits.  Hilderbrand argues that the photo session was a favor to Ms. Hilderbrand.  Regardless of the facts surrounding the incident, the tiger was on the premises as a result of the business of the Billingsleys.  In North River Ins. Co. v. Poos, 553 S.W.2d 500 (Mo. Ct. App. 1977), a child was injured when he was bitten by a wolf. The wolf was kept at the defendant's residence and the child was visiting the defendant at the time of the accident.  The court determined that the wolf was kept for the defendant's employment and therefore "cannot be said to be an activity ordinarily incident to a non-business pursuit because in keeping [the wolf] defendant Poos was engaged in an activity constituting a part of his business pursuit." Id. at 502.  A similar ruling occurred in Cincinnati Ins. Co. v. Shelby Mut. Ins. Co., 542 S.W.2d 822 (Tenn. Ct. App. 1976).  In Cincinnati Ins. Co., a child's arm was torn when he stuck it in a lion's cage.  The lion was located at the residence of John Hanna who kept the lion after it was moved from Pet Kingdom, where it had been a business attraction.  Hanna deducted the cost of the lion's living expenses on his tax return.  The court determined that the homeowner's policy did not cover the accident because "the keeping of a lion is not ordinarily incident to a non-business pursuit.  Lions are not ordinarily kept at home."  Id. at 825.

-13-

While the incident that caused the accident in this case was not directly related to an income-producing activity of the business, the keeping of the tiger was not ordinarily incident to a non-business pursuit. The Billingsleys' policy provided by Safeco does not cover the death of Ms. Hilderbrand.

## IV.  Conclusion

Safeco is not liable under the homeowner's policy to provide coverage for the death of Ms. Hilderbrand.  The clerk is directed in enter judgment in favor of Safeco.

IT IS SO ORDERED.

Dated this   14th   day of July 2008, at Wichita, Kansas.


                                        s/ Monti Belot
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE